**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-11126
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT ARROYO,
ALBERTO RENDON and TOMAS VASQUEZ,

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Northern District of Texas
(4:95-CR-057-E)
_____

December 13, 1996

Before GARWOOD, DAVIS and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellants challenge their convictions and sentences on drug trafficking charges. Finding no reversible error, we affirm.

I.

In March of 1995, an employee of Southwest Motor Transport notified Dallas area police officers that he was delivering a

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

suspicious crate to Southwest Motor's Dallas terminal. The crate was addressed to "Arroyo's Body Shop." Upon its arrival in Dallas, police officers on the scene arranged to have a narcotics detection dog sniff the crate. After the dog alerted on the crate, the Drug Enforcement Agency ("DEA") was notified, and the officers began obtaining a search warrant. During this waiting period, appellants Rendon and Arroyo arrived to pick up the crate and they were detained and questioned. When the officers opened the crate they found approximately 200 pounds of marijuana. The officers then questioned Arroyo and Rendon further. Arroyo told Agent Lugo and Officer Ross that Vasquez, an acquaintance of his, offered him $400 to pick up a crate containing "dope." Similarly, Rendon admitted that he was hired by Vasquez for $300 to assist Arroyo in picking up a crate of marijuana and delivering it to Vasquez's house in Fort Worth to be "cut up." Arroyo and Rendon also told the officers that Vasquez led them to Southwest Motor Transport, but had remained a block away during the attempted pick up. The officers then obtained a search warrant for Vasquez's residence in Fort Worth. At Vasquez's residence, the officers questioned Vasquez on his role in the crime, and searched his home. Vasquez admitted that he knew the crate contained marijuana. During the search, the officers discovered handwritten notes evidencing earlier drug transactions.

A grand jury indicted Arroyo, Rendon and Vasquez on three counts: conspiracy to distribute marijuana (count 1); possession

with intent to distribute marijuana (count 2); maintaining a place to distribute marijuana (count 3).

At trial, the issue of whether the appellants knew the crate contained drugs was hotly contested. The defendants all testified in their defense. Their testimony was essentially the same; each defendant testified he believed the crate contained auto parts, not marijuana, and he never told the police otherwise. Vasquez testified that he asked Arroyo and Rendon to assist him because, "El Negro", to whom Vasquez owed a favor, had offered Vasquez $700 to pick up a crate containing auto parts being delivered to Dallas, and that he could not carry out the job without Arroyo and Rendon's help. Arroyo and Rendon testified they accepted Vasquez's offer without questioning the contents of the crate.

After a three day trial, Arroyo and Rendon each were convicted on counts 1 and 2, and acquitted on Count 3. Vasquez was convicted on all three counts. This appeal followed.

## II.

On appeal, the appellants raise several arguments which we will discuss below.

## A.

Vasquez and Arroyo both argue that the government produced insufficient evidence to support their convictions. Arroyo contends that the evidence was insufficient to prove that he had the requisite knowledge or intent to sustain his convictions on

3

counts 1[1] and 2.[2]  Vasquez argues that the prosecution failed to prove the knowledge element of the three counts for which he was convicted.[3]

We review the sufficiency of the evidence in a light most favorable to the verdict.  United States v. McCord, 33 F.3d 1434 (5th Cir. 1994), cert. denied, Haley v. United States, 115 S.Ct. 2558 (1995).  The conviction should be upheld if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  Id.

1.

We consider first Arroyo and Vasquez's argument that the credible testimony and evidence is insufficient to support their conspiracy conviction because the evidence failed to show that they knew that the substance in the crate was marijuana.

With respect to Vasquez, he admitted his knowledge of the

---

[1] To establish a drug conspiracy, the government must prove: "(1) the existence of an agreement between two or more persons to violate federal narcotics laws; (2) that the defendant knew of the agreement; and (3) that the defendant voluntarily participated in the agreement."  United States v. Broussard, 80 F.3d 1025, 1031 (5th Cir. 1996), cert. denied, Merritt v. United States, 117 S.Ct. 264 (1996).

[2] "A conviction for the offense of possession of marijuana with the intent to distribute requires proof that the defendant (1) knowingly (2) possessed marijuana (3) with the intent to distribute it."  United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996), cert. denied, 116 S.Ct. 1867 (1996).

[3] The judge instructed the jury that it could only find the defendant guilty of maintaining a residence for the purpose of distributing marijuana if the defendant acted knowingly.

4

crate's contents to Agent Lugo. Vasquez also told Lugo that he hired Arroyo and Rendon to keep himself out of trouble. Even if the jury did not believe this testimony, they knew that Vasquez had agreed to pay Arroyo and Rendon $700 to pick up a crate in Dallas and transport it to Fort Worth. The jury was entitled to infer that this was an inordinate sum for this service. The jury also heard testimony that Vasquez led Arroyo and Rendon to the freight terminal, but remained approximately a block away from the pick up site. The jury also knew that the crate was addressed to a non-existent company and the identity of the shipper was unknown. The government produced ample evidence to support the jury's conclusion that Vasquez knew the substance he hired Arroyo and Rendon to pick up and transport to his home was marijuana.

With respect to Arroyo, when Ross interviewed him, Arroyo stated that he believed the crate contained some type of illegal drug. Arroyo later told Special Agent Lugo that Vasquez offered him $400 for a few hour's work to pick up a box that contained "dope". Arroyo stated that he and Rendon followed Vasquez's blue Mitsubishi automobile to the warehouse in Dallas where Arroyo was instructed to go into the warehouse and ask for a delivery for "Arroyo's Body Shop" and use a number he was given to pick up the crate. The evidence outlined above is sufficient to establish that Arroyo knew that the crate contained marijuana.

2.

Vasquez next argues that the evidence was insufficient to

sustain his conviction for possession of marijuana and maintaining a place for the purpose of distributing marijuana.

As outlined above, the evidence demonstrated Vasquez's personal participation in retrieving the marijuana from the freight company. Furthermore, Vasquez's guilt for the substantive offense may be established by evidence of offenses committed by his co-conspirators, Arroyo and Rendon, during the course of the conspiracy. See Pinkerton v. United States, 328 U.S. 640 (1946); United States v. Garcia, 917 F.2d 1370, 1377 (5th Cir. 1980). The evidence demonstrated that the substantive offenses of which Vasquez was convicted were committed in furtherance of the conspiracy while Vasquez was a member.

Vasquez argues that nothing was found in his house to incriminate him and therefore the evidence is insufficient to support his conviction for maintaining a place for the purpose of manufacturing marijuana. We disagree. The evidence was sufficient to demonstrate that Vasquez instructed Arroyo and Rendon to deliver the crate of marijuana to his Richmond Avenue home in Fort Worth. Also, evidence of records of marijuana prices and poundages were found in his home.

For the reasons stated above, appellants' challenges to the sufficiency of the evidence are meritless.

B.

Rendon, Vasquez and Arroyo argue next that the district court abused its discretion by giving the jury a deliberate indifference

instruction.[4]  The standard of review for challenges to jury instructions is "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them."  United States v. Lara-Verasquez, 919 F.2d 946, 950 (5th Cir. 1990). The court's charge must be both legally accurate and factually supportable. Id.  Thus, the district court "'may not instruct the  jury on a charge that is not supported by evidence.'"  Id.(quoting United States v. Ortega, 859 F.2d 327, 330 (5th Cir. 1988)).

The deliberate ignorance instruction is appropriate only if the evidence raises two inferences: "(1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct."  Lara-Verasquez, 919 F.2d at 952.

Arroyo, Rendon and Vasquez argue that the evidence failed to raise the required inferences.

Ross and Lugo's testimony that Arroyo, Rendon and Vasquez admitted knowing the crate contained drugs is sufficient to raise

_____

[4]The district court instructed the jury that:

You may find that the defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  While knowledge on the part of the defendant cannot be established  merely by demonstrating that the defendant was negligent, careless or foolish,  knowledge  can  be  inferred  if  the  defendant deliberately blinded himself to the existence of a fact.

7

an inference that each was "subjectively aware of the high probability of the existence of illegal activity." See Lara-Verasquez,919 F.2d at953(holding that prong one of the deliberate ignorance test ordinarily will be satisfied by the "same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct. . . ."). The evidence presented at trial is also sufficient to raise an inference that each defendant "purposefully contrived to avoid learning of the illegal conduct." First, with regard to Arroyo and Rendon, the evidence revealed the following relevant facts: both were asked by Vasquez, who was not in the auto parts business, to pick up a package allegedly containing auto parts; the package was addressed to "Arroyo's Body Shop," a fictitious company; the money Vasquez agreed to pay these men equaled their weekly salary even though the assigned pick up was at most a one day job; Vasquez led them to the pick up site, but instead of accompanying them to pick up the package, watched safely from the street. Despite these suspicious circumstances, both Arroyo and Rendon testified that they did not question Vasquez's assertions that the crate contained auto parts. The circumstances of Arroyo and Rendon's involvement were sufficiently suspicious that their failure to question these circumstances raised an inference that they purposefully contrived to avoid guilty knowledge.

The evidence also supports the charge as to Vasquez. First, Vasquez contended he did not question the suspicious circumstances

8

presented by a visit from a man he had met only once asking him to pick up a package of auto parts. The jury was entitled to infer that Vasquez sought to avoid knowledge of the illegal conduct by hiring Arroyo and Rendon to retrieve the package while he watched safely from the street. Moreover, Agent Lugo testified Vasquez told him he hired Arroyo and Rendon to "stay out of trouble." This evidence was sufficient to support the instruction.

C.

Arroyo and Rendon argue next that the district court erred in refusing to give the requested limiting instruction they requested concerning the "dope notes"[5] found at Vasquez's residence.

We review the district court's refusal to include the requested instruction for abuse of discretion; the court is afforded substantial latitude in formulating its instructions. United States v. Storm, 36 F.3d 1289, 1294 (5th Cir. 1994), cert. denied, 115 S.Ct. 1798(1995). The district court's refusal to include the requested limiting instruction will constitute reversible error only if: (1) the requested instruction is substantially correct; (2) the actual charge given to the jury did not substantially cover the content of the proposed instruction; and (3) the omission of the instruction would seriously impair the defendant's ability to present his defense. Id. at 1294.

---

[5] The "dope notes" were exhibits 7, 8, and 9 at trial. These exhibits are handwritten notes found at Vasquez's residence evidencing earlier drug transactions.

9

At trial, Arroyo and Rendon both objected to the introduction of the "dope notes". Their objection was overruled, but the court stated it would give the jury a limiting instruction regarding the notes as part of the jury charge.

The court then included the following instruction in its charge:

> A separate crime is charged against one or more of the defendants in each count of the indictment. Each count and the evidence pertaining to it should be considered separately and individually. In this regard, you consider against each defendant only that evidence which has been shown to have some connection with that defendant.

Arroyo and Rendon requested their own instruction[6] and objected to the court's failure to give it.

The instruction the court gave adequately instructed the jury to consider only the evidence related to Arroyo and Rendon. The district court did not err in refusing to give appellants' proffered instruction.

### D.

Arroyo argues next that the district court committed reversible error by overruling his objection to a portion of Rendon's closing argument. Rendon's counsel analogized Officer

---

[6] The defendants submitted the following instruction:

You are instructed that the Government's Exhibits 7, 8, and 9 were admitted only against the defendant Thomas Vasquez, and you may not consider Government's Exhibits 7, 8, nor 9 against the defendants Robert Arroyo or Alberto Rendon for any purpose.

Ross and Agent Lugo to an umpire who makes a bad call but refuses to admit his mistake even after viewing replays that establish he was wrong because, right or wrong, the call was made and the game is over. Arroyo objected to this statement because he contends the statement was inconsistent with the central argument of his defense--that the officers' testimony regarding his confession is not credible and must be disregarded. This argument, although different from Arroyo's argument that the officers were liars, nonetheless asks the jury to reach the conclusion sought by Arroyo--that the officers' testimony is not credible and should be disregarded. The district court did not abuse its discretion in allowing this argument.

### E.

We have also considered Arroyo's argument that the district court committed reversible error by refusing to grant a motion for new trial after the court was informed that a juror inadvertently saw Arroyo being escorted by deputy U.S. Marshals out of the restroom. The defendant was not in hand cuffs and the district court did not err in concluding that this incident did not operate to defendant's prejudice. Moreover, the court's charge effectively removed any possibility of bias from this event. The district court therefore did not err in denying Arroyo's motion for mistrial.

### F.

We also conclude that the district court did not abuse its

discretion in refusing to admit prior statements of Officer Ross which were offered by Rendon following his cross-examination of this officer. The district court was entitled to find that the officer's earlier statement was not inconsistent in any significant respect. Additionally, the officer did not deny making the statements.

G.

Vasquez argues finally that the district court erred in finding that he was a leader or an organizer in the offense of conviction pursuant to U.S.S.G. S 3B1.1(c). This finding resulted in a two-level increase under the sentencing guidelines. The evidence established that Vasquez was in charge of the receipt of 200 pounds of marijuana; that he hired others to pick up the marijuana and that he was responsible for instructing and paying those who helped him. The evidence therefore supports the district court's finding which is not clearly erroneous.

**III.**

For the above reasons, the district court's judgment and sentence as to each defendant is affirmed.

12